JOSE VALDOVINOS, Plaintiff-Appellant, v. GALLANT INSURANCE COMPANY, Defendant-Appellee.

Second District    No. 2—99—0799

Opinion filed July 7, 2000.

Patrick M. Kinnally and Matthew J. Herman, both of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, for appellant.

Timothy T. Meade, of Meade, Engelberg & Associates, of Bedford Park, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Jose Valdovinos, sued defendant, Gallant Insurance Company, for failing to settle a claim under plaintiff's automobile insurance policy. The trial court awarded plaintiff $11,091 on the claim but denied his petition for attorney fees and costs under section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 1998)). Plaintiff appeals, arguing that the trial court abused its discretion when it denied his petition because defendant's failure to negotiate was vexatious and unreasonable.

At trial, plaintiff testified that, on September 10, 1997, defendant issued a policy to insure plaintiff's 1995 Cadillac against losses sustained in traffic collisions. Three days later, the car was severely damaged when plaintiff was involved in an auto accident. On September 17, 1997, plaintiff filed a claim under the policy. In response to defendant's requests, plaintiff supplied defendant with the accident report number, the bill of sale proving he owned the car, and a recorded statement of plaintiff's account of the accident. Plaintiff hired Joe Edgington, an independent appraiser, and he estimated that it would cost $11,591 to repair the car. After plaintiff sent Edgington's estimate to defendant, defendant told plaintiff that it would process the claim. Plaintiff called defendant over 20 times but received no response. Early in November 1997, he borrowed money from friends and family and paid $11,591 for the repairs. A few days later, defendant sent plaintiff a check for approximately $6,800, but plaintiff returned the check because it was inadequate. Plaintiff finally regained the use of his car more than 10 weeks after the accident.

Edgington testified that he estimated the cost of repairing plaintiff's vehicle. He used a labor rate of $36 per hour when calculating the cost because that rate was reasonable under the circumstances. Plaintiff could not obtain labor for only $24 per hour because that rate would be unprofitable for a repair shop in the area. During 1996, defendant hired Edgington's appraisal company to estimate the cost of repairing several vehicles involved in traffic accidents. Defendant repeatedly told Edgington that his company provided an excellent appraisal service.

John Lanoue, one of defendant's claims adjusters, testified that, although he was assigned to plaintiff's claim, he never spoke to

plaintiff, Edgington, or plaintiff's attorney. Among Lanoue's duties was the recording of correspondence between insureds and defendant. One of defendant's field appraisers was directed to estimate plaintiff's repair costs, and Lanoue received the estimate on October 3, 1997. The appraiser completed a supplemental estimate two·weeks later. Defendant never sent the appraisals to plaintiff or his attorney.

On November 6, 1997, defendant sent plaintiff a check for $6,814. The check did not cover the repair costs because defendant was unwilling to replace the car's damaged aftermarket parts or to pay $36 per hour for labor. Defendant never explained its settlement offer to plaintiff. Lanoue also admitted that, under the policy, defendant had no right to dictate where the repairs would be completed.

The trial court awarded plaintiff $11,091 on his insurance claim, concluding that "defendant really made no attempt to adjudicate the plaintiff's claim" as required under the policy. The court also noted that defendant failed to explain its settlement offers or recommend a less expensive repair shop. The court accepted plaintiff's assertion that he was frustrated by defendant's failure to return his many telephone calls.

The trial court later heard plaintiff's petition for fees and costs under section 155 of the Code. At the hearing, the parties agreed to include the trial transcript in evidence. Plaintiff's attorney testified that he billed plaintiff $8,670 for attorney fees and costs incurred during the litigation. He introduced an itemized statement of the work that his firm completed. Defendant offered no evidence to rebut plaintiff's calculation of the fees and costs.

Lanoue testified that, when an insured files a claim under a recently issued policy, defendant routinely investigates the claim for fraud. In this case, defendant concluded that there was no evidence of fraud and that an investigation was unnecessary. After defendant learned that plaintiff had retained an attorney, it increased its settlement offer to $8,021. Defendant did not explain the offer to plaintiff, and it made no other settlement offers.

■ The trial court denied plaintiff's petition for fees under section 155 but awarded plaintiff prejudgment interest from the date he filed the complaint. A reviewing court should not reverse a trial court's denial of attorney fees, costs, and the additional statutory amount unless the trial court abused its discretion. *Marcheschi v. Illinois Farmers Insurance Co.*, 298 Ill. App. 3d 306, 311 (1998). We agree with plaintiff that the trial court abused its discretion when it declined his request under section 155 of the Code.

■ Section 155 of the Code provides in relevant part:

"(1) In any action by or against a company wherein there is in is-

sue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is *vexatious and unreasonable*, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." (Emphasis added.) 215 ILCS 5/155(1)(a) through (1)(c) (West 1998).

Our supreme court has noted that the purpose of section 155 is to provide a remedy for insurer misconduct:

" 'Although some companies are very liberal in the payment of claims, this is by no means true of all. In the absence of any allowance of attorneys' fees, the holder of a small policy may see practically his whole claim wiped out by expenses if the company compels him to resort to court action, although the refusal to pay the claim is based upon the flimsiest sort of a pretext. The strict limit on the amount allowable makes the section significant only for small claims. It should prove wholesome in its effect upon companies unreasonably withholding payment of such claims. It is doubtful if there are many judges who would allow such fees when the defense was bona fide although deemed inadequate.' " *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 520-21 (1996), quoting H. Havinghurst, *Some Aspects of the Illinois Insurance Code*, 32 Ill. L. Rev. 391, 405 (1937).

An insurer is not liable for attorney fees under section 155 merely because it litigated, and lost, the issue of insurance coverage. If the insurer is found to be vexatious and unreasonable in refusing to process a claim, however, section 155 authorizes the court to award fees and costs. *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 751-52 (1997). A court should consider the totality of the circumstances when deciding whether an insurer's actions are vexatious and unreasonable. Factors to consider are the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property. If a *bona fide* dispute existed regarding the scope of the insurance coverage, an insurer's delay in settling the claim may not violate section 155. *Mobil Oil Corp.*, 288 Ill. App. 3d at 752.

■ In this case, plaintiff hired a professional appraiser who estimated that the vehicle sustained $11,591 in damage. After subtracting the deductible, plaintiff submitted a claim for $11,091, and defendant waited nearly two months before submitting an unexplained counteroffer of $6,814. Although the trial court awarded plaintiff $11,091 plus interest, plaintiff incurred substantial litigation fees and costs and was deprived of the use of his vehicle. He was forced to borrow money to pay for the repairs and for alternative transportation. The legislature enacted section 155 of the Code to address this scenario. Plaintiff saw his whole claim nearly wiped out by litigation expenses because defendant forced him to resort to legal action. See *Cramer*, 174 Ill. 2d at 520. There was no *bona fide* dispute over the cost of the repairs, and defendant's brief, initial investigation revealed that plaintiff's claim was not fraudulent.

In *Myrda v. Coronet Insurance Co.*, 221 Ill. App. 3d 482 (1991), the plaintiff filed a claim under his insurance policy after he reported his car stolen. The plaintiff complied with the insurer's demand that he complete a polygraph examination, and the insurer denied his claim because it believed that the plaintiff failed the test. *Myrda*, 221 Ill. App. 3d at 485-86. The police later discovered the badly damaged car and concluded that it had, in fact, been stolen. An arbitration panel awarded the plaintiff $7,625, including $925 for the insurer's "unreasonable action." *Myrda*, 221 Ill. App. 3d at 485. The insurer rejected the decision and offered the plaintiff a $4,000 settlement. The plaintiff rejected the offer and the case went to trial.

The trial court concluded that the insurer's conduct was vexatious and unreasonable because it offered no evidence to support its affirmative defense that the plaintiff "stole" his own car to defraud the insurer. The plaintiff requested $15,233 in attorney fees, and the trial court concluded that all the attorneys' work was reasonable and necessary. Nevertheless, the trial court awarded the plaintiff only $3,500 for his litigation expenses. On appeal, this court noted that the trial court's ruling could not be reconciled with its factual findings absent an implicit holding that an insured may be penalized for rejecting an unreasonable settlement offer. We noted that section 155 of the Code is intended to discourage the insurer from using its superior financial position to profit at the insured's expense. *Myrda*, 221 Ill. App. 3d at 491. We concluded that the trial court abused its discretion in awarding the plaintiff only $3,500 in fees, and we increased the award under section 155 to $15,208. *Myrda*, 221 Ill. App. 3d at 491-92.

In this case, the trial court found that defendant made no attempt to settle the claim, and plaintiff introduced unrebutted evidence of the litigation expenses he incurred. When it denied plaintiff's request for

fees, the trial court implicitly penalized him for rejecting defendant's unreasonable settlement offers. We conclude that the trial court abused its discretion when it denied plaintiff's petition. See *Myrda*, 221 Ill. App. 3d at 491.

Accordingly, we reverse the portion of the judgment of the trial court denying count II of plaintiff's complaint for fees and penalty pursuant to the Code. We also remand this cause and direct the trial court to award plaintiff an additional $8,670 for litigation expenses he incurred as reflected by the unrebutted evidence of reasonable fees and costs. The trial court is also to determine and award the appropriate statutory penalty pursuant to section 155 of the Code (215 ILCS 5/155 (West 1998)) and the additional attorney fees plaintiff incurred in connection with this appeal.

For these reasons, that portion of the judgment of the circuit court of Kane County denying count II of plaintiff's complaint for attorney fees and a penalty pursuant to the Code is reversed, and the cause is remanded with directions. In all other respects, the judgment is affirmed.

Affirmed in part and reversed in part; cause remanded with directions.

THOMAS and HUTCHINSON, JJ., concur.