CHRISTINE SIWEK *et al.*, Plaintiffs-Appellees, v. JESSE WHITE, Secretary of State, *et al.*, Defendants (American Access Casualty Company, Defendant-Appellant).

First District (5th Division)    No. 1—07—2600

Opinion filed February 27, 2009.

Parrillo, Weiss & O'Halloran, of Chicago (Keely Hillison and M. Shmal, of counsel), for appellant.

Spina, McGuire & Okal, P.C., of Elmwood Park (Timothy H. Okal, of counsel), for appellees.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

On June 27, 2003, plaintiff-appellee Christine Siwek was involved in an automobile accident while operating a vehicle owned by plaintiff-appellee Jerrold D. Erickson. Siwek's insurer, defendant-appellant, American Access Casualty Company (American), informed the State of Illinois that Siwek's insurance policy had been cancelled and she was therefore not covered for the accident. Following an administrative hearing, Siwek's driver's license was suspended and the plaintiffs brought the instant suit for administrative review, declaratory judgment, and injunctive relief. The plaintiffs' complaint generally alleged that the insurance policy was never properly canceled and Siwek was therefore properly insured at the time of the accident.

The trial court dismissed American's affirmative defenses, granted the plaintiffs' motion for summary judgment, and awarded the plaintiffs attorney fees pursuant to section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (West 2006). On appeal, American contends that the trial court erred in dismissing its affirmative defenses and in granting summary judgment to the plaintiffs, because the insurance policy was properly canceled before the accident. American also asserts that the award of attorney fees and costs under section 155 was inappropriate because its actions were not vexatious and unreasonable

and, in any case, no benefits due Siwek were ever denied or delayed. We affirm.

## I. BACKGROUND

On July 27, 2003, Christine Siwek was involved in an automobile accident while operating Erickson's vehicle. The plaintiffs notified the Illinois Department of Transportation (IDOT) of the accident and identified American as their liability insurer. However, on September 17, 2003, IDOT informed counsel for plaintiffs that America contended the insurance policy had been cancelled on May 13, 2003. Therefore, IDOT certified the names of both Erickson and Siwek to the Illinois Secretary of State as having either owned or operated a vehicle involved in an accident without proper liability coverage. On September 22, 2003, the Illinois Secretary of State issued a notice of the suspension of Erickson's driving privileges based upon the IDOT certification. Erickson requested an administrative hearing, which was held before hearing officer and defendant Mary Beth Wheeler.

At the hearing, Erickson testified that he owned the vehicle Siwek was driving but had no other involvement in the accident. Siwek testified that insurance was purchased from American through an insurance broker, defendant Illinois Insurance Center, Inc., and she never received any notice that the insurance had been canceled. Siwek and Erickson also presented a memo from Illinois Insurance Center, dated May 19, 2003, containing an amended insurance identification card and declaration page issued by American to Jerrold Erickson (with Siwek identified as a co-operator), dated May 14, 2003, and effective from March 25, 2003, to September 7, 2003.

On January 30, 2004, the Illinois Secretary of State issued an order adopting Wheeler's written findings and recommendations, dismissing the matter as to Erickson and suspending Siwek's driver's license and driving privileges as of February 13, 2004. However, the written findings specifically noted that: "With respect to insurance, if SIWEK was covered at the time of this occurrence, either the insurance company or its agent needs to confirm such coverage to the Illinois Department of Transportation. Once the requisite coverage is confirmed, appropriate action will be taken by the Secretary of State."

On February 7, 2004, the plaintiffs filed a two-count complaint in the circuit court. The first count sought administrative review of the Secretary of State's decision, and the second count sought declaratory and injunctive relief against American. Specifically, the plaintiffs asked for a declaratory judgment that the American insurance policy was in full force and effect on the date of the accident and that American had a duty to certify that fact to the State of Illinois.

Siwek also sought a temporary restraining order to enjoin the Secretary of State from suspending her driving privileges pending resolution of the case. The trial court denied this motion, finding that the pleadings demonstrated an issue of fact as the existence of insurance. However, the court did stay the State's order of suspension pending resolution of the plaintiffs' suit pursuant to section 3—111(a)(1) of the Administrative Review Law. 735 ILCS 5/3—111(a)(1) (West 2004).

On February 20, 2004, American filed an answer denying the material allegations of the plaintiffs' complaint as well as its first set of affirmative defenses. The plaintiffs successfully moved to dismiss these initial affirmative defenses, as well as a number of subsequently filed defenses, until American filed its fourth amended affirmative defenses on May 15, 2006. In this pleading, American asserted two main arguments.

First, American contended that the insurance policy was originally procured through an independent insurance broker, Illinois Insurance Center, after a previous policy with another insurer had been cancelled. The policy was issued to Erickson, Siwek was identified as a co-operator, and it was to be effective from March 25, 2003, to September 7, 2003. Up-front payment for the policy was provided by Fullerton Finance Company (Fullerton), a premium finance company, with monthly payments thereafter to be made by the plaintiffs to Fullerton. However, on or about May 13, 2003, American received a notice from Fullerton that the policy should be immediately canceled due to the plaintiffs' failure to pay. American honored this request and cancelled the policy, effective May 13, 2003, as it argued it was compelled to do by section 143.14(c) of the Illinois Insurance Code. 215 ILCS 5/143.14(c) (West 2002).

Second, American asserted that its policy specifically contained language obligating it to provide coverage only "in consideration of the payment of the premium." Because the required premium had not been paid by or on behalf of the plaintiffs, there was no consideration for any converge and therefore American had no obligation to provide coverage for Siwek's accident.

On June 22, 2004, the plaintiffs moved to dismiss American's fourth amended affirmative defenses, with prejudice. With respect to American's first argument, the plaintiffs asserted a number of reasons why the purported May 13, 2003, cancellation of the policy was ineffective as a matter of law. These included the fact that Fullerton was not authorized to cancel the policy by a properly executed power of attorney and that the plaintiffs were never properly notified of the cancellation. Additionally, the plaintiffs noted that, irrespective of the

purported May 13, 2003, cancellation, on May 14, 2003, American issued an amended insurance identification card and declaration page stating that the plaintiffs were covered by liability coverage through September 7, 2003. Regarding American's assertion that no premium had ever been paid for the policy, the plaintiffs argued that documents attached to American's own pleading established that a payment for such coverage had been made by Fullerton on behalf of the plaintiffs. On August 29, 2006, the trial court dismissed American's fourth amended affirmative defenses with prejudice.

Thereafter, the plaintiffs filed a motion for summary judgment seeking a declaration that the American insurance policy was in effect at the time of the accident and that American had a duty to both provide coverage for the accident and certify that fact to the State of Illinois. A briefing schedule was set and a hearing on the motion was scheduled for January 29, 2007. However, American did not file a response to the plaintiffs' summary judgment motion. Instead, the record reflects that on December 20, 2006, American's attorney sent a letter to plaintiffs' counsel stating that "although American Access does not agree with the ruling to strike the affirmative defenses, they are not going to appeal the decision and will agree to defend and indemnify the Siweks [sic] pursuant to the terms of the policy ***. I have asked American Access to forward a letter concerning the insurance coverage which you can give to the Secretary of State."

Just prior to the January 29, 2007, hearing on the plaintiffs' summary judgment motion, counsel for the plaintiffs filed a motion for attorney fees, costs, and sanctions to be imposed upon American pursuant to section 155 of the Illinois Insurance Code. At the hearing, counsel for American appeared with a letter from American, dated that same day and addressed to the Secretary of State, stating that the plaintiffs' insurance policy was in effect on the day of the accident. The trial court granted the plaintiffs' motion and continued the case as to the remaining administrative review claim against the State of Illinois. Also at that time, counsel for plaintiffs served a copy of the section 155 motion upon American's attorney.

On February 8, 2007, an agreed order was entered dismissing the plaintiffs' administrative review claim with prejudice, in which the Secretary of State acknowledged receiving American's January 29, 2007, letter and represented that all references to the suspension of Siwek's driving privileges would be stricken from its records. Thus, all that remained to be addressed by the trial court was the plaintiffs' section 155 motion.

In their motion, the plaintiffs asserted that they were entitled to fees, costs, and sanctions because American's failure to recognize

coverage and its continuous pleading and repleading of unviable affirmative defenses was vexatious and unreasonable. In response, American asserted that reconsideration of the trial court's decisions was required due to an appellate decision issued at the time summary judgment was entered but of which the parties and the trial court were not then aware, *Selective Insurance Co. v. Urbina*, 371 Ill. App. 3d 27 (2007). American also argued that the section 155 motion should be denied because: (1) American had never denied, or delayed providing, any possible liability coverage as no suit had ever been filed against the plaintiffs, (2) the plaintiffs never paid a premium for the policy, and (3) the plaintiffs' section 155 motion was untimely because their complaint did not contain any allegations supporting their claim of vexatious and unreasonable conduct.

On August 16, 2007, the trial court granted the plaintiffs' section 155 motion, awarded them attorney fees and costs of $10,650.04, and entered a judgment against American. According to a bystander's report subsequently entered by the trial court, its decision was based upon the following findings of fact and conclusions of law: (1) the trial court was not precluded from making an award under section 155 following the entry of summary judgment on the underlying complaint, (2) the *Selective Insurance* decision did nothing to affect its determination that the May 14, 2003, amended declaration provided the plaintiffs with coverage, (3) despite American's protestations to the contrary, its own documentation established that the plaintiffs had in fact made payments for the policy, and (4) in light of the totality of the circumstances, the actions taken by American to reach finality in this matter were vexatious and unreasonable. American has now appealed.

## II. ANALYSIS

On appeal, American contends that the trial court erred in dismissing its affirmative defenses, granting summary judgment to the plaintiffs, and in awarding attorney fees and costs pursuant to section 155. For the following reasons, we affirm.

### A. Dismissal of Affirmative Defenses and Grant of Summary Judgment

American raises a number of arguments concerning the trial court's dismissal of its affirmative defenses and the grant of the plaintiffs' motion for summary judgment. However, American's arguments cannot be considered on appeal.

"Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004). Waiver may be either expressed or implied, and arises from the acts, words,

conduct, or knowledge of a party. *Home Insurance Co.*, 213 Ill. 2d at 326, citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 396 (1993). Moreover, the doctrine of invited error prohibits any party from complaining of an error on appeal " 'which that party induced the court to make or to which that party consented.' " *Ahmed v. Pickwick Place Owners' Ass'n*, 385 Ill. App. 3d 874, 888 (2008), quoting *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). The doctrine of waiver applies even to our *de novo* review of an appeal from a summary judgment. *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 874 (2003).

■ The record on appeal reflects that after American's fourth amended affirmative defenses were dismissed, the plaintiffs filed a motion for summary judgment. American never responded to or challenged the motion in any way. Instead, American informed the plaintiffs that it was not going to appeal the decision and would agree to defend and indemnify the plaintiffs. On the day the summary judgment motion was set for hearing, counsel for American appeared in court with a letter from American, addressed to the Secretary of State, affirmatively stating that the plaintiffs were insured on the day of the accident. It was only at this point, when the plaintiffs had obtained all that they had sought in their complaint against American, that the trial court granted the plaintiffs' motion for summary judgement.

It is quite clear that American made the strategic decision not to appeal from the dismissal of its affirmative defense, not to further challenge the plaintiffs' contention that they were entitled to insurance coverage for Siwek's accident, and to affirmatively certify to the Secretary of State that such insurance was indeed in effect. It was only after American took these actions that the trial court granted the plaintiffs' summary judgment motion, and only then did the plaintiffs and the Secretary of State seek an agreed order from the trial court dismissing the remaining count of the complaint. Under such circumstances, we refuse to further consider American's assertions that the trial court committed any error in dismissing its affirmative defenses or in ultimately granting summary judgment to the plaintiffs. *Brdar v. Cottrell, Inc.*, 372 Ill. App. 3d 690, 710 (2007) (a party is not entitled to relief for any possible error caused by its own failure to act); *Brax v. Kennedy*, 363 Ill. App. 3d 343, 350 (2005) (waiver is particularly pertinent where the conduct of a party induced the trial court to rule as it did).

Moreover, even if we did consider American's arguments, we would affirm. In the trial court and again on appeal, American's arguments primarily focus on establishing that its May 13, 2003, cancellation of the plaintiffs' insurance policy was effective. However, American has

never effectively countered the plaintiffs' contentions regarding the May 14, 2003, amended declaration. The most that American has attempted to demonstrate is that it was the independent insurance broker, Illinois Insurance Center, that forwarded this amended declaration to the plaintiffs.

Despite this argument, American has never refuted the plaintiffs' assertion that it was American that *issued* this document—*after* the purported cancellation. Nor has it refuted the contention that this document explicitly provides that coverage was effective on the date of the accident. Language in American's policy incorporates the declaration page into the policy. See *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 23 (2005) (insurance policy is to be interpreted as a complete document, including declarations page). Thus, even if we did address American's challenge to the dismissal of its affirmative defenses and the grant of summary judgment, we would affirm on the basis of the May 14, 2003, amended declaration.

## B. Section 155 Award

American also argues that the trial court improperly granted the plaintiffs' section 155 motion for attorney fees and costs. On appeal, American asserts that the award was improper because: (1) as no suit or claim for damages was ever filed against the plaintiffs, coverage was never denied or delayed, (2) a *bona fide* coverage dispute existed between the parties, and (3) American was actually correct to assert that the plaintiffs' insurance policy was canceled. We disagree.

Section 155 of the Illinois Insurance Code provides, in pertinent part, that "[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees [and] other costs." 215 ILCS 5/155(1) (West 2006). " 'A court should consider the totality of the circumstances when deciding whether an insurer's actions are vexatious and unreasonable. Factors to consider are the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property. If a *bona fide* dispute existed regarding the scope of the insurance coverage, an insurer's delay in settling the claim may not violate section 155.' " *Gaston v. Founders Insurance Co.*, 365 Ill. App. 3d 303, 325 (2006), quoting *Valdovinos v. Gallant Insurance Co.*, 314 Ill. App. 3d 1018, 1021 (2000).

Initially, the parties disagree on the appropriate standard of review to be applied to this issue. An abuse of discretion standard is generally

utilized to review a trial court's decision to award attorney fees and costs under section 155. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 160 (1999). However, American contends that a *de novo* standard should apply in this case because the trial court did not hold an evidentiary hearing and decided the plaintiffs' section 155 motion based solely upon the written record. American notes that courts have applied a *de novo* standard where the trial court's section 155 determination was made in the context of ruling on a motion for judgment on the pleadings or a motion for summary judgment. *Ehlco Liquidating Trust*, 186 Ill. 2d at 160; *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 751 (1997).

In both of these cases, however, the court was reviewing a section 155 request actually pled in the insured's complaint. Here, the plaintiffs filed a separate motion for a section 155 award, and that motion was not addressed until after the trial court had already ruled on the plaintiffs' motion for summary judgment. Courts have recognized an abuse of discretion standard applies in such circumstances. *Baxter International, Inc. v. American Guarantee & Liability Insurance Co.*, 369 Ill. App. 3d 700, 703 (2006); *Peerless Enterprises, Inc. v. Kruse*, 317 Ill. App. 3d 133, 144-45 (2000). Therefore, that is the standard we will apply here.

■ In this case, American informed the State of Illinois that the plaintiffs were not insured for the June 27, 2003, accident. As a result, an administrative proceeding was initiated that resulted in the suspension of Siwek's driver's license and would thereafter deprive her of the privilege of operating an automobile. The plaintiffs were thus forced to bring the instant action to establish insurance coverage for the accident and correct this result. In prosecuting this case over the course of two years, American filed five sets of affirmative defenses that were repeatedly dismissed, finally with prejudice. Moreover, none of American's successive affirmative defenses substantively countered the plaintiffs' assertion that it was *American* itself that issued the May 14, 2003, amended declaration. In the end, and only after explicitly considering the totality of the circumstances, the trial court found American's actions to be vexatious and unreasonable. We see no abuse of discretion in this decision.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

FITZGERALD SMITH, P.J., and TOOMIN, J., concur.