2022 IL App (1st) 220793-U

No. 1-22-0793

Order filed August 25, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| *In re* ESTATE OF MARY MAROL MATTEIS, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Giovanni Matteis, Petitioner-Appellee; Marol State, LLC, | ) | Cook County. |
| and Marol Rush, LLC, Respondents-Appellants and | ) | |
| Cross-Appellees; and Ralph W. Marol, Individually and in | ) | |
| his Capacity as Manager of Marol State, LLC, and Marol | ) | No. 20 P 1580 |
| Rush, LLC, and Matthew Marol, Respondents). | ) | |
| | ) | |
| ---------------------------------------------------------------------- | ) | Consolidated |
| | ) | |
| RALPH W. MAROL, Individually and in his Capacity as | ) | |
| Manager of Marol State, LLC, and Marol Rush, LLC, | ) | |
| MAROL STATE, LLC, and MAROL RUSH, LLC, | ) | |
| | ) | |
|     Plaintiffs, | ) | No. 20 CH 4401 |
| | ) | |
|   v. | ) | |
| | ) | |
| BYLINE BANK, Successor Trustee of The Mary Marol | ) | |
| Matteis Declaration of Trust dated September 6, 2006, and | ) | |
| The Mary Marol Matteis Declaration of Trust dated | ) | |
| September 6, 2006, | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | |

No. 1-22-0793

| | |
|---|---|
| (Giovanni Matteis, Petitioner-Appellee; Marol State, LLC, | ) |
| and Marol Rush, LLC, Plaintiffs-Appellants and Cross- | )   Honorable |
| Appellees; and Byline Bank, Defendant-Appellee and | )   Terrence J. McGuire, |
| Cross-Appellant). | )   Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

## ORDER

¶ 1    *Held*:  Petitioner, who was the decedent's sole heir and lifetime beneficiary of a trust that consisted of the decedent's interests in two companies, had standing to move the circuit court for a preliminary injunction to compel the two companies to resume monthly $30,000 distributions to the trust. Moreover, the circuit court did not abuse its discretion by granting petitioner's emergency motion to issue the preliminary injunction.

¶ 2    This interlocutory appeal arose from the administration of the decedent's estate and trust, and the parties' disagreement about the nature and extent of their ownership, management, and participation rights in two companies, *i.e.*, appellants Marol State, LLC and Marol Rush, LLC. The circuit court granted the emergency motion of appellee Giovanni Matteis and ordered the two companies to resume $30,000 monthly distributions to the trust. The court also ordered the trust to distribute the balance to Giovanni after the payment of reasonable expenses.

¶ 3    On appeal, the two companies argue that the circuit court erred by granting Giovanni's motion for a preliminary injunction. They also argue that Giovanni lacked standing to act for the trust or demand any injunctive relief.

¶ 4    Cross-appellant, the trustee and executor Byline Bank, which joined Giovanni's motion for a preliminary injunction, argues the circuit court abused its discretion by denying Byline Bank's request to freeze the companies' assets and require them to distribute a lump sum of $3 million to the trust.

¶ 5    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 6                        I. BACKGROUND

¶ 7    In April 2020, a probate case was filed to administer the estate of decedent Mary Marol Matteis, who died testate in March 2019. Her sole heir at law was her surviving spouse, appellee Giovanni Matteis, but he was not a legatee under her will. Ralph Marol was decedent's brother. Matthew Marol was Ralph's son and decedent's nephew. As of January 2021, Byline Bank was the successor trustee of decedent's trust and successor executor of her estate.

¶ 8    During her lifetime, decedent established The Mary Marol Matteis Declaration of Trust, dated September 6, 2006. The trust was amended and restated on September 23, 2008, and again on October 8, 2016. The trust is the sole legatee under decedent's will, dated October 8, 2016.

¶ 9    Decedent died owning a 50% interest of two limited liability companies, *i.e.*, appellants Marol State, LLC and Marol Rush, LLC (collectively, the companies), which held and managed parcels of real estate. Also, decedent was a member of the companies at the time of her death. During decedent's lifetime, Ralph was the other 50% owner of the companies. Both decedent and Ralph were co-managers of the companies. After decedent's death, Matthew became a manager and member of both companies.

¶ 10    During her lifetime, decedent assigned on October 16, 2016, her economic interest in the companies to herself in her capacity as the trustee of the trust. The companies made substantial monthly distributions to decedent during her lifetime and continued to make distributions to the trust upon her death. She was the sole beneficiary of the trust until her death. Her will stated that

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

after personal effects were distributed, the estate residue was to be distributed to the trust. The trust agreement provided that, after her death, the trust residue would be divided into a marital trust and a family trust. During his lifetime, Giovanni would be entitled to mandatory income distributions and discretionary principal distributions from the marital and family trusts for reasonable support, maintenance and health. Upon Giovanni's death, Matthew would receive the trust corpus.

¶ 11     In May 2020, the probate court granted the executor's petition for issuance of citations to discover assets against Ralph, Matthew, the companies, and the companies' accountants. The petition sought information regarding the management and finances of the companies, including profit and loss statements, tax records, bank statements, payroll records, and management records.

¶ 12     In June 2020, Ralph, individually and on behalf of and as a manager of the companies, and the companies, filed a chancery case against the trustee, seeking a declaratory judgment regarding issues related to the trust, the citation proceedings, and the ownership of the companies. Specifically, Ralph and the companies sought entry of a judgment that the trust and estate were not members of the companies, were limited to transferee interests only, and thus were not entitled to review the companies' books and papers.

¶ 13     In July 2020, Giovanni filed in the probate case petitions to issue citations to recover assets against the companies, and the citations were issued in August 2020. In response, the companies moved to dismiss the recovery citations, arguing that decedent was dissociated from the companies at the time of her death as a matter of law and the most her estate could claim was a distributional interest.

¶ 14     In October 2020, Giovanni filed a renunciation of decedent's will.

¶ 15    In December 2020, Giovanni filed substantively identical motions in the probate and chancery cases to disqualify the counsel of the companies, Ralph, and Matthew. Giovanni argued that counsel's joint representation of these respondents violated Rule 1.7 of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010).

¶ 16    In February 2021, the probate and chancery cases were consolidated.

¶ 17    In their March 2021 response to Giovanni's motions to disqualify, respondents argued, *inter alia*, that Giovanni lacked standing to seek their counsel's disqualification and failed to establish the existence of a conflict.

¶ 18    In his reply, Giovanni argued, *inter alia*, that respondents' counsel owed him a duty as a third-party beneficiary of counsel's representation of the companies based on Giovanni's interest in decedent's estate and trust, which held decedent's interest in the companies.

¶ 19    On June 10, 2021, the circuit court granted in part and denied in part Giovanni's motions to disqualify respondents' counsel. The court ruled that Giovanni had standing to bring the motions to disqualify respondents' counsel, and that counsel could not jointly represent all the respondents, but could continue to represent either the companies or the individuals in the present litigation.

¶ 20    Ralph, Matthew and the companies timely petitioned this court for leave to appeal under Illinois Supreme Court Rule 306(a)(7) (eff. Oct. 1, 2020), to challenge the propriety of the circuit court's order disqualifying their counsel's joint representation. In August 2021, this court allowed the petition (case No. 1-21-0800), and the circuit court proceedings were stayed.

¶ 21    Meanwhile, the companies had completely liquidated their assets in about December 2021 and held nearly $13 million in cash. During decedent's lifetime, the companies had been making $30,000 monthly distributions to her trust since about 2013. In March 2020, the companies

suspended the monthly distributions for three or four months due to COVID-19. When the distributions resumed, the companies unilaterally reduced the amount of the distributions to $10,000 per month. Then, on April 1, 2022, the companies ceased all distributions to the trust. The managers of the companies stated that they deemed it in the companies' best interests to suspend all distributions until the court resolved the parties' competing claims to decedent's 50% economic interest in the companies to ensure that the companies were making the distributions to the proper party.

¶ 22    While the appeal was pending in case No. 1-21-0800, Giovanni filed before this court on April 15, 2022, an emergency motion to modify the stay to allow him to compel the companies to resume the monthly distributions to the trust. On April 19, 2022, this court granted Giovanni's motion and modified the stay of proceedings to only allow him to pursue his proposed emergency motion to compel the distributions.

¶ 23    On April 20, 2022, Giovanni filed an emergency motion in the circuit court, asking it to compel the companies to resume the $30,000 distributions to effect decedent's intent to provide him, her sole heir, financial support during his lifetime. He argued that he relied exclusively on the distributions from the trust for his living expenses, including his food, utilities and mortgage payments.

¶ 24    Trustee Byline Bank filed a memorandum in support of compelling the distributions. However, Byline Bank asked the court to order a $3 million lump sum distribution to the trust and freeze the companies' remaining assets. Byline Bank argued that the companies were not conducting business operations and there was no dispute that the trust was immediately entitled to at least 25% of the economic interest in the companies.

¶ 25    The companies argued that Giovanni had no standing to act on behalf of the trust or to demand injunctive relief, that he failed to plead entitlement to preliminary injunctive relief, and the court should not substitute its judgment for the business judgment of the companies' managers. The companies also moved to strike Byline's Bank's memorandum in support of Giovanni's emergency motion, arguing that it violated the automatic stay.

¶ 26    On May 16, 2022, the circuit court heard argument and ruled in favor of Giovanni. The court found (as further elaborated in the court's subsequent June 10, 2022 ruling) that Giovanni had standing because he was a current beneficiary of the trust, a citation proponent and the sole heir of the estate, and either the estate or the trust or both had an interest in the companies. The court also found that (1) Giovanni would suffer irreparable harm if he lost his only substantial source of income, (2) had no adequate remedy at law, and (3) would likely succeed on the merits because either the companies, or the estate or the trust were a 50% distributional partner or income partner entitled to 50% of the assets of the companies. Moreover, Byline Bank had conceded that the purpose of the trust was to provide a comfortable income for Giovanni. In addition, all the companies' real estate had been liquidated, which added additional income of at least $8 million to the companies, and the trust was entitled to at least $4 million of that income. The court concluded, based on the size of the estate and the amounts to be distributed to the beneficiary, that monthly $30,000 distributions to Giovanni did not risk either dissipation of the trust assets or that Giovanni would receive more than he eventually and inevitably would receive.

¶ 27    On June 2, 2022, the circuit court entered a written preliminary injunction order, *nunc pro tunc*, to May 17, 2022, compelling the companies to make $30,000 monthly distributions to the trust until further order of the court. The court also directed the trust to distribute the balance to

Giovanni after payment of reasonable expenses. However, the circuit court denied Byline Bank's request to freeze the companies' assets and require them to distribute a $3 million lump sum to the trust.

¶ 28    The companies timely appealed, and Byline Bank timely cross-appealed.

¶ 29    The companies also moved the circuit court to stay enforcement of the mandatory preliminary injunction pending appeal, set the amount and form of the appeal bond, and extend the time for the filing and approval of security. Giovanni and Byline Bank opposed the companies' motion.

¶ 30    On June 10, 2022, the circuit court denied the companies' motion to stay enforcement pending appeal.

¶ 31    On July 14, 2022, this court affirmed the judgment of the circuit court in case No. 1-21-0800, which disqualified counsel from jointly representing the companies and Ralph and Matthew but allowed counsel to represent either the companies or the individuals. *In re Estate of Mary Marol Matteis*, 2022 IL App (1st) 210800-U.

¶ 32                                II. ANALYSIS

¶ 33    This court has jurisdiction over this interlocutory appeal and cross-appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which provides that an appeal may be taken from an interlocutory order of the circuit court granting an injunction.

¶ 34    The ability of decedent's estate and trust to inherit her membership interest in the companies (and thus the ability of Giovanni to inherit decedent's membership interest through the estate or receive distributions from decedent's trust as the beneficiary) is an issue in dispute between the parties that is still pending in the circuit court. Specifically, the companies, Ralph and

Matthew argue that (1) the companies' operating agreements and Illinois law bar any individual or entity from succeeding to membership in the companies absent the consent of all the members, (2) Ralph never consented to the admission of decedent's trust as a member of either of the companies, and (3) the greatest interest the estate, trust, and Giovanni have received or can receive in the companies is a mere distributional interest. Our review of this appeal, however, is limited to the issue of the circuit court's grant of Giovanni's emergency motion for a preliminary injunction.

¶ 35                                    A. Illinois Supreme Court Rule 341

¶ 36    First, we address the companies' claim urging us to strike the response briefs of Giovanni and Byline Bank, and Byline Bank's brief as cross-appellant for failure to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). According to the companies, the introductory paragraphs are deficient for failure to state whether the judgment appealed from is based on a jury verdict and whether any question is raised on the pleadings. The companies argue that Giovanni's and Byline Bank's statements of fact are misleading, argumentative, inaccurate, and fail to convey the relevant facts accurately and fairly without argument or comment. The companies also argue that Giovanni and Byline Bank fail to provide citations to relevant legal authority and to the record. In addition, the companies argue that Byline Bank's cross-appellant brief fails to provide a statement of issues without detail or citation of authorities because the statement contains purported details alleging the amount of cash currently held by the companies and the assertion that the trust is immediately entitled to a specific amount of the companies' property.

¶ 37    Where violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted. *Cottrill v. Russell*, 253 Ill. App. 3d 934, 938 (1993). Any failure by Giovanni or Byline Bank to cite the record or supporting authority

for certain assertions of facts and conclusions are not so flagrant as to hinder our analysis. We conclude that Giovanni's and Byline Bank's properly asserted facts and legal citations are sufficient to permit review of the instant appeal. Thus, we do not strike their briefs but will disregard those portions that do not comport with the supreme court rules.

¶ 38                                    B. Standing

¶ 39    The companies argue that the circuit court erred when it ruled that Giovanni had standing to bring his emergency motion to order the companies to resume distributions to the trust. Specifically, the circuit court found that Giovanni had standing because he was a current beneficiary of the trust, a citation proponent and the sole heir of the estate, and either the estate or the trust or both had an interest in the companies.

¶ 40    The issue of standing presents a question of law that this court reviews *de novo. Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36; see also *Thomas v. Weatherguard Construction Company, Inc.*, 2015 IL App (1st) 142785, ¶ 63 (under *de novo* review, the reviewing court performs the same analysis the trial court would perform). Since lack of standing is an affirmative defense, the burden of pleading and proving the defense is on the party asserting it. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010).

¶ 41    "In Illinois, standing is established by simply demonstrating some injury to a legally cognizable interest." *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 745 (2009) (citing *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 419 (2005)). " 'The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit' " and " 'assures that issues are raised only by those parties with a real interest in the outcome of the controversy.' " *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d

1, 6 (2010) (quoting *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999)); see also *Lynch v. Devine*, 45 Ill. App. 3d 743, 747-48 (1977) (the purpose of the doctrine of standing is to ensure that courts are deciding actual, specific controversies, and not abstract questions or moot issues); *Commonwealth Edison Co. v. Community Unit School District No. 200*, 44 Ill. App. 3d 665, 670 (1976) (although standing is designed to preclude persons having no interest in a controversy from bringing suit, it should not preclude a valid suit from being litigated). For an injury to a legally cognizable interest to give rise to standing, the claimed injury may be actual or threatened, and it must be: (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1028 (2010) (citing *Glisson*, 188 Ill. 2d at 221).

¶ 42    First, the companies argue that Giovanni lacked standing to act for the trust because the trustee is usually the appropriate person to bring an action against a third party on behalf of a trust. We disagree. Giovanni did not "bring an action" here. Rather, in the probate case brought by the executor to administer decedent's will, Giovanni, as decedent's sole heir and the lifetime beneficiary of her trust, filed petitions to issue citations to recover assets against the companies. See 755 ILCS 5/16-1(a) (West 2020) (conferring standing to bring a citation petition on "any other person interested in the estate"); 755 ILCS 5/1-2.11 (West 2020) (The Probate Act of 1975 defining an "interested person" in relation to any action under the Act to include an heir and one who has a financial interest or property right that may be affected by the action). Later, Giovanni filed motions to disqualify opposing counsel based on a potential conflict of interest in both the probate

case and the chancery case brought by the companies and Ralph. Giovanni is not a plaintiff in this litigation; he is a petitioner for relief in cases brought by the other parties.

¶ 43    The companies also argue that Giovanni is a stranger to the companies and, thus, lacks standing to demand injunctive relief because he does not have a clearly ascertainable right or interest that needs protection. To support this claim, the companies cite provisions of their operating agreements and the Limited Liability Company Act (805 ILCS 180/1-1 *et seq.* (West 2020)) regarding member's rights to argue that Giovanni is not a member of the companies and cannot demand distributions of the companies' financial accounts.

¶ 44    As stated above, the ability of decedent's estate and trust to inherit her membership interest in the companies (and thus the ability of Giovanni to inherit decedent's membership interest through the estate or receive distributions from decedent's trust as the beneficiary) are issues in dispute between the parties that are still pending in the circuit court. This appeal is limited to the issue of the circuit court's grant of Giovanni's emergency motion for a preliminary injunction.

¶ 45    Furthermore, this court previously addressed the claim that Giovanni lacked standing to bring his motions to disqualify opposing counsel and concluded that Giovanni had the requisite interest to confer on him standing to file his motions. *In re Estate of Mary Marol Matteis*, 2022 IL App (1st) 210800-U, ¶¶ 29-39. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Courts refer to this principle as the law of the case doctrine. By protecting against relitigation of settled issues, "[t]his rule of practice promotes the finality and efficiency of the judicial process." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988). "The doctrine applies to questions of law and fact and encompasses a court's explicit

decisions, as well as those decisions made by necessary implication." *American Service Insurance Co. v. China Ocean Shipping Co. (Americas), Inc.*, 2014 IL App (1st) 121895, ¶ 17. "The rule is that no question which was raised or could have been raised in a prior appeal on the merits can be urged on subsequent appeal \*\*\*." *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 413 (1970).

¶ 46    The issue of Giovanni's standing was resolved on appeal when this court held that he had the requisite interest to confer on him standing to file his motions in this litigation. *In re Estate of Mary Marol Matteis*, 2022 IL App (1st) 210800-U, ¶ 39. As such, our holding that Giovanni has standing in this litigation is the law of the case and the parties are barred from relitigating that issue.

¶ 47                                C. Preliminary Injunction

¶ 48    The companies argue that the circuit court erred by granting Giovanni's emergency motion for preliminary injunctive relief because he failed to establish that he has any clearly ascertainable right in need of protection and failed to plead facts sufficient to establish the elements of irreparable harm, no adequate remedy at law, and a substantial likelihood of success on the merits. The companies also argue that the circuit court should not have disturbed their managers' exercise of their business judgment to cease all distributions to the trust from the company based on the alleged risk of potential future liability if the court ultimately finds that those distributions belong to the estate.

¶ 49    The purpose of a preliminary injunction is to preserve the *status quo* pending a decision on the merits of a cause. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992). The *status quo* is the last, actual, peaceable, uncontested status which preceded the controversy. *Baal v. McDonald's Corp.*, 97 Ill. App. 3d 495, 502 (1981). Here, the *status quo* of the parties encompassed the

companies' routine manner of making $30,000 monthly distributions to the trust both for several years during decedent's lifetime and for one year after her March 2019 death. Thereafter, the companies made $10,000 monthly distributions to the trust for more than one year. Giovanni seeks to preserve the *status quo*, *i.e.*, his right as the lifetime beneficiary of the trust to continue receiving the same amount of funds that he and decedent had received for several years as their primary source of income, pending the final determination on the merits of the issues involving the administration of decedent's estate and the controversy of the parties' ownership interests in the companies.

¶ 50    A preliminary injunction is an extreme remedy that should be employed only in situations when an emergency exists and serious harm would result if the injunction is not issued. See *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373 (1985) (and cases cited therein). A party seeking a preliminary injunction must establish that (1) a clearly ascertained right in need of protection exists, (2) irreparable harm will occur without the injunction, (3) there is not an adequate remedy at law for the injury, and (4) there is a likelihood of success on the merits. *Hartlein*, 151 Ill. 2d at 156.

¶ 51    On appeal, a reviewing court examines only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question as to the existence of the rights claimed. The decision to grant or deny a preliminary injunction rests within the sound discretion of the circuit court, and, on review, the decision will not be disturbed absent an abuse of discretion. Stated differently, the only question before the court of review is whether there was a sufficient showing to sustain the order of the trial court. See *Dixon Ass'n for Retarded Citizens v. Thompson*, 91 Ill. 2d 518, 524-25 (1982). An abuse of discretion occurs when no reasonable person would take the

position adopted by the trial court (*In re Marriage of Knoche,* 322 Ill. App. 3d 297, 308 (2001)), or where the circuit court acts arbitrarily, fails to employ conscientious judgment, and ignores recognized principles of law. *Castro v. Brown's Chicken & Pasta, Inc.,* 314 Ill. App. 3d 542, 554 (2000).

¶ 52    The companies argue that the circuit court ruling regarding injunctive relief depends upon interpretation of the Limited Liability Company Act (805 ILCS 180/1-1 *et seq.* (West 2020)), and thus requires ruling on a questions of law, making *de novo* review appropriate. We disagree. As stated above, the ability of decedent's estate and trust to inherit her membership interest in the limited liability companies (and thus the ability of Giovanni to inherit decedent's membership interest through the estate or receive distributions from decedent's trust as the beneficiary) are issues in dispute between the parties that are still pending in the circuit court. This court's review of this interlocutory appeal is limited to the issue of the circuit court's award of preliminary injunctive relief to Giovanni regarding the resumption of the companies' distributions to the trust.

¶ 53    The circuit court found that Giovanni had a clearly ascertained right that needed protection because he was the current beneficiary of the trust, a citation proponent and the sole heir of the estate, and either the estate or the trust or both had an interest in the companies. The court also found that Giovanni would suffer irreparable harm if he lost his only substantial source of income; had no adequate remedy at law; and would likely succeed on the merits because either the companies, or the estate or the trust were entitled to decedent's 50% share of the assets of the companies. Moreover, Byline Bank had conceded that the purpose of the trust was to provide a comfortable income for Giovanni. In addition, all the companies' real estate had been liquidated, which added additional income of at least $8 million to the companies, and the trust was entitled

to at least $4 million of that income. The court concluded, based on the size of the estate and the amounts to be distributed to the beneficiary, that monthly $30,000 distributions to Giovanni did not risk either dissipation of the trust assets or that Giovanni would receive more than he eventually and inevitably would receive.

¶ 54    We conclude that the circuit court did not abuse its discretion by granting Giovanni's request for a preliminary injunction. There is no dispute that decedent owned a 50% interest in the companies, which historically made distributions to her trust to provide for her and then for Giovanni after her death. Moreover, the hearing on Giovanni's emergency motion established that he was totally reliant on the companies' monthly distributions to the trust for his basic needs and the companies had liquidated their real estate holdings and were holding millions of dollars in cash. The circuit court acted well within its discretion when it determined that preliminary injunctive relief was proper and found that (1) Giovanni has rights, which arise through the trust's interests in the companies, that need protection, (2) legal remedies would be insufficient to protect his rights, (3) he would suffer irreparable harm without the injunction, and (4) and he was likely to succeed on the merits of the case because the companies would have to distribute decedent's portion of the sale of the companies' assets at some point—whether through her trust or her estate.

¶ 55    Finally, the companies' argument that the circuit court interfered with their managers' exercise of their business judgment is unavailing.

> "The purpose of the business judgment rule is to protect directors who have been diligent and careful in performing their duties from being subjected to liability from honest mistakes of judgment. However, it is a prerequisite to the application of the business judgment rule that the directors exercise due care in carrying out their corporate duties. If

directors fail to exercise due care, then they may not use the business judgment rule as a shield for their conduct." *Davis v. Dyson*, 387 Ill. App. 3d 676, 694 (2008).

The business judgment rule is not an applicable defense here because neither Giovanni's emergency motion nor Byline Bank's supporting motion sought to impose any liability upon any officer, director or member of the companies.

¶ 56                           D. Byline Bank's Cross-Appeal

¶ 57    Byline Bank argues that the circuit court abused its discretion by refusing to (1) compel the companies to immediately distribute at least $3 million to the trust, and (2) freeze the remaining assets of the companies, which are holding cash assets in excess of $12.8 million, pending the ultimate resolution of the consolidated probate and chancery cases. Byline Bank argues that the trust is the rightful owner of at least 25% of the companies' assets and the court must act to preserve the *status quo*, which includes preventing the dissipation or destruction of the trust's interest in the companies. Byline Bank asserts that the companies and their managers have refused to give Byline Bank financial information concerning the sales of the companies' properties and operations prior to those sales, so Byline Bank has no way to evaluate the transactions that the companies entered into or determine what additional rights or claims the estate or trust may have with respect to the companies' assets. Byline Bank argues that the court must freeze the companies' assets to protect the estate and trust from irreparable harm based on the companies' propensity to deal in bad faith and withhold information and funds from Byline Bank, especially considering that the companies "do not operate any business as a going concern" and thus have no legitimate purpose to expend any resources pending the outcome of this litigation.

¶ 58      The companies argue that Byline Bank lacks standing to request injunctive relief because it has no clearly ascertainable right in need of protection based on the application of provisions of the Limited Liability Company Act to this dispute. The companies also complain that Byline Bank did not petition the appellate court for leave to seek any relief and, although the bank styled its memorandum as supporting Giovanni's emergency motion, the bank demanded separate and additional relief—freezing the companies' assets and ordering the companies to distribute to the trust a $3 million lump sum payment—that differed from Giovanni's requested relief in scope and character. The companies argue that Byline Bank's act of demanding injunctive relief in the circuit court grossly exceeded the leave the appellate court granted to Giovanni, violates the automatic stay provision of Illinois Supreme Court Rule 306(c)(6) (eff. October 1, 2020), and should not be tolerated.

¶ 59      The companies forfeited review of these issues because they did not specify in their notice of appeal that they were appealing the circuit court's denial of their motion to strike Byline Bank's memorandum. See Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). Forfeiture aside, Byline Bank has standing as the trustee to pursue relief on behalf of the trust, and, as stated above, any interpretation or application of the Limited Liability Company Act is beyond the scope of this appeal. Furthermore, we find that Byline Bank's memorandum in support of Giovanni's emergency motion for injunctive relief did not exceed the scope of this court's order granting Giovanni leave to bring his emergency motion.

¶ 60      We conclude that the trial court did not abuse its discretion by denying Byline Bank's motion in support of Giovanni's request for a preliminary injunction. We cannot say that no

reasonable person would adopt the circuit court's view because the trust provisions specifically limited the distributions to Giovanni during his lifetime.

¶ 61                                III. CONCLUSION

¶ 62    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 63    Affirmed.