2022 IL App (1st) 210856-U
No. 1-21-0856
Order filed September 19, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| KIMBERLY NELSON, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20 CH 5147 |
| RETIREMENT BOARD OF THE POLICE ANNUITY and BENEFIT FUND CITY OF CHICAGO, | ) ) ) ) | The Honorable Eve Reilly, Judge, presiding. |
| Defendants-Appellants. | ) ) | |

JUSTICE HYMAN delivered the judgment of the court.
Justice Walker concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1    *Held*: Trial court order finding that Board's decision to award plaintiff a 50% duty disability was against the manifest weight affirmed under the law of the case doctrine where the appellate court previously found plaintiff was entitled to a 75% duty disability benefit.

¶ 2    When this case was last before the appellate court, Kimberly Nelson, a police officer,

challenged the decision of the Retirement Board of the Police Annuity and Benefit Fund of

Chicago, awarding her an ordinary disability benefit for post-traumatic stress disorder (PTSD) developed after responding to an armed robbery call. A different panel set aside the Board's ordinary benefit award and, without remanding the case, ordered an award of a duty disability benefit. Based on the record before it, the panel found that because Nelson's PTSD resulted from responding to an incident while on duty, she qualified for a duty disability benefit of 75% of her salary rather than an ordinary disability benefit of 50% of her salary. *Kimberly Nelson v. Retirement Board of the Police Annuity and Benefit Fund of the City of Chicago*, 2020 IL App (1st) 192032-U (*Nelson I*). This order became final when the Board did not appeal or file a petition for rehearing.

¶ 3　　　The Board met and, without further hearing, interpreted *Nelson I* as awarding a disability benefit based on 50% of her salary. Nelson again filed a complaint for administrative review. The circuit court reversed the Board's award finding, "that the Retirement Board's decision [to award 50% of Nelson's salary] was against the manifest weight of the evidence." Specifically, the circuit court pointed to the findings in *Nelson I* that Nelson's PTSD resulted from the December 8 incident. The Board filed a motion to reconsider, which the circuit court denied.

¶ 4　　　The Board now appeals, arguing Nelson's PTSD related to a pre-existing mental disorder, entitling her to only a 50% pension benefit under section 5-154(a)(i) of the Illinois Pension Code (40 ILCS 5/5-154(a)(i) (West 2020)). But this court decided that issue in *Nelson I*, and, as noted, the Board did not appeal. Under the law of the case doctrine, we affirm the circuit court.

¶ 5　　　　　　　　　　　　　　　　Background

¶ 6        The decision in Nelson's initial appeal details the facts that gave rise to her disability claim. *Nelson I*, 2020 IL App (1st) 192032. We reiterate the facts necessary to resolve the issue before us.

¶ 7        Nelson filed a disability claim alleging she began suffering from PTSD after responding to an armed robbery call on December 8, 2016. After an evidentiary hearing on Nelson's application, the Board awarded her an ordinary disability benefit rather than a duty disability benefit. The Board found its ordinary disability award appropriate after concluding that Nelson's injury was not "the result of an identifiable act of duty incident" but due to perceived personal issues with peers and her belief that the CPD mishandled the December 8 incident. Nelson filed a complaint for administrative review of the Board's decision. The circuit court affirmed the Board's ordinary disability benefit award.

¶ 8        On appeal, the panel concluded Nelson experienced PTSD as a result of her performance of an act of duty and was entitled to a duty disability award. Specifically, in *Nelson I*, this court found that Nelson's injury occurred "in her performance of an act of police duty. She was on duty, responding to the call of a violent crime when the trauma of her fear and the lack of support from her dispatcher caused her to experience PTSD. Regardless of whether she ever encountered the alleged offender, she was experiencing the special risks of police duty when she suffered the trauma that [led] to her disability." *Id.* ¶ 42. Without remanding, the panel set aside the Board's initial award of an ordinary disability benefit. The panel ordered that "Ms. Nelson be awarded a duty disability benefit"(*Id.* ¶ 53), which the court noted was 75% rather than 50% of her salary. *Id.* ¶¶ 36-37.

¶ 9        The Board then met and, without holding further hearings or taking additional evidence, awarded Nelson a duty disability benefit equal to 50% of her salary. A transcript from the

Board's meeting shows one trustee introduced a motion to award Nelson's benefit "[i]n accordance with the appellate court case decision," which was clarified to be made "at 50 percent." The motion passed without opposition, memorializing the outcome in a letter to Nelson.

¶ 10    Nelson filed another complaint for administrative review in circuit court. This time she argued that the appellate court's order requiring the Board to award her a duty disability benefit conferred an amount equal to 75% of her salary, not 50%, citing section 5-154(a). That section provides that an officer is entitled to 75% when he or she becomes disabled after incurring an injury during an act of duty. The circuit court concluded the Board's decision "was against the manifest weight of the evidence" and reversed it. Though not mentioning the law-of-the-case doctrine, the circuit court's order from which the Board appealed accepted *Nelson 1*'s "explicit findings, namely that: (i) Nelson's psychological issues were under control before the December 8 incident, (ii) Nelson's psychological issues and interpersonal challenges with her peers did not cause her inability to work after the December 8 incident, and (iii) the December 8 incident was the cause of Nelson's PTSD.

¶ 11    The Board now appeals, arguing Nelson's PTSD related to a pre-existing mental disorder, entitling her to only a 50% pension benefit under section 5-154(a)(i) of the Illinois Pension Code (40 ILCS 5/5-154(a)(i) (West 2020)). Nelson conversely argues that because the December 8 incident was the cause of her PTSD, the Board erred in awarding 50% rather than 75% of her salary. Nelson further cross-appeals, arguing: (i) the Board should be sanctioned for ignoring the appellate court's decision on remand, (ii) the circuit court should have awarded her attorney's fees and litigation expenses under the Code, and (iii) we should sanction the Board under Supreme Court Rule 375 for pursuing a frivolous appeal.

¶ 12                                                    Analysis

¶ 13        The law-of-the-case doctrine bars relitigation of an issue already decided in the same case; the appellate court's resolution of the issue controls the trial court and subsequent appeals. *American Service Insurance Co. v. China Ocean Shipping Co. (Americas), Inc.*, 2014 IL App (1st) 121895, ¶ 17. The doctrine applies to questions of law and fact and encompasses a court's explicit decisions and decisions made by necessary implication. *CNA International, Inc. v. Baer*, 2012 IL App (1st) 112174, ¶¶ 38-39. The law-of-the-case doctrine aims to protect the parties' settled expectations, ensure uniformity of decisions, maintain consistency during a single case, effectuate proper administration of justice, and bring litigation to an end. *Petre v. Kucich*, 356 Ill. App. 3d 57, 63, (2005).

¶ 14        The *Nelson I* opinion noted that the Board had found Officer Nelson's disabling condition to be " 'a result of her perceived, unconfirmed mishandling by the [Department] of the events surrounding the December 8, 2016, incident, which was further exasperated by her longstanding and documented history of issues with emotional and psychological distress associated with her perception and conjecture of how she was being treated and viewed by others within the [Department].' " *Nelson I*, 2020 IL App (1st) 192032, ¶ 40.

¶ 15        The *Nelson I* court rejected this argument, "We agree with Ms. Nelson that the injury she experienced was in her performance of an act of police duty. She was on duty, responding to the call of a violent crime when the trauma of her fear and the lack of support from her dispatcher *caused her to experience PTSD*. Regardless of whether she ever encountered the alleged offender, she was experiencing the special risks of police duty when she suffered the trauma that [led] to her disability." *Id*. ¶ 42. (emphasis added.)

¶ 16      In this appeal, the Board again asks us to review whether Nelson's PTSD pre-existed the December 8 incident. But, as *Nelson I* states, "We also agree with Ms. Nelson that the record demonstrates that any "longstanding" psychological issues that Ms. Nelson may have had were under control since she had missed no work due to these issues for many months prior to this incident. Moreover, the fact that Ms. Nelson may have been particularly susceptible to PTSD does not change the fact that the cause of her current condition was the events of December 8, 2016." *Id.* ¶ 43; See also ¶ 44 ("We therefore hold that the Board's finding that Ms. Nelson's injury did not occur in the performance of an act of duty was against the manifest weight of the evidence.")

¶ 17      At oral argument, the Board's attorney asserted the law of the case doctrine does not apply because after *Nelson I*, the Board needed to take additional steps, presumably gather more evidence, to determine whether Nelson's disability was pre-existing. But the Board did not do that. Instead, after a meeting, it voted to award Nelson a 50% duty disability benefit based on the previous record. That record was also before the *Nelson I* court, which, as noted, determined she was entitled to a 75% duty disability benefit.

¶ 18      Whether or not we agree with *Nelson I*'s approach or holding has no bearing because an appellate decision already decided the issue.

¶ 19      In *Nelson I*, the court explained that an ordinary disability benefit is 50% of the officer's salary. *Id.* ¶¶ 36-37. In contrast, an officer with a duty disability, like Nelson, receives a benefit equal to 75% of the officer's salary. *Id.* That finding harmonizes with cases awarding a 75% duty disability benefit for an officer who incurs a mental health injury after an act of duty incident. See, *e.g.*, *Warner* v. *Retirement Board of the Police Annuity and Benefit Fund of the City of Chicago*, 2022 IL App (1st) 200833-U (affirming circuit court's finding that police

officer was entitled to continue receiving a 75% duty disability after his PTSD caused by on duty incident had ceased). Thus, the law-of-the-case doctrine controls.

¶ 20                                                    Sanctions

¶ 21        Nelson asks for "sanctions" and "all costs and litigation expenses she has incurred." Nelson first raised the sanctions issue in her memorandum in support of her petition for administrative review, based on "the Board intentionally cho[o]s[ing] to ignore the Appellate Court's clear decision." The circuit court did not specifically address sanctions in reversing the Board's decision but denied "all other relief."

¶ 22        To preserve an issue for review, a party must file a timely appeal or cross-appeal under Illinois Supreme Court Rule 303(a)(3) (eff. July 1, 2017). Nelson did not appeal or file a cross-appeal. So, we lack jurisdiction to review the denial of her request for sanctions.

¶ 23        Nelson also asks for litigation expenses and attorney's fees under section 5/5-228(b). 40 ILCS 5/5-228(b) (West 2020). Section 5/5-228(b) permits officers to recover "court costs and litigation expenses, including reasonable attorney's fees" when the Board denies an officer's duty disability benefit request, which the officer successfully challenges. *Id*. Nelson waived this issue by not raising it before the circuit court. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("'issue not presented to or considered by the circuit court cannot be raised for the first time on review.'").

¶ 24        Nor do we find Nelson entitled to sanctions under Illinois Supreme Court Rule 375 (Feb. 1, 1994). Nelson insists this appeal is frivolous: "it would not have been brought in good faith by a reasonable, prudent attorney." *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312 (1990). Nelson, however, fails to identify specific abusive conduct or explain how the appeal is frivolous or not taken in good faith. Also, the imposition of Rule

375 sanctions comes within our broad discretion. *Korzen*, 2013 IL App (1st) 130380 at ¶ 87

(citing *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 182 (2011)).

¶ 25    Accordingly, we deny Nelson's request for Rule 375 sanctions.

¶ 26    Affirmed.

¶ 27    Justice Pucinski, specially concurring:

¶ 28    I agree with the majority but only because *Nelson 1* is the law of the case.